## DONALD CALWAY
### *vs.*
## HARRY D. WILLIAMSON

Superior Court          Hartford County          File No. 65585

MEMORANDUM FILED FEBRUARY 3, 1943.

*Lawrence J. Matzkin,* of Waterbury, for the Plaintiff.

*Edwin M. Ryan* and *Farrel J. LeRoy,* of Hartford, for the Defendant.

Memorandum of decision in action against schoolmaster for injuries to pupil.

O'SULLIVAN, J. Speaking broadly, it may be said that there are but few matters in dispute concerning the events which occurred one morning in April, 1941, at the Sarah Reynolds Grammar School in Forestville. Shortly before the morning session opened, some of the children were engaged in playing with a baseball on the playground. Among them was the plaintiff. He was not a rugged boy. His age was ten; his weight, 89 pounds; and his height was below that of the average boy of similar age.

The ball had been taken from a little girl who, quite typically, ran to her teacher to complain. She returned to the yard with a Mrs. Taylor, who taught third grade and in whose room the plaintiff was a pupil. Just as she appeared on the scene, the ball was in the process of disappearing over or under a fence along the rear boundary line of the school property. Mrs. Taylor told the plaintiff to go after it but he replied that he had not thrown it and unless she ordered the boy who was responsible to accompany him, he wouldn't get it. Further words ensued between Mrs. Taylor and the plaintiff, and in the meantime the ball was retrieved by another youngster. Shortly afterwards, the plaintiff entered the school building and went to his room. Mrs. Taylor then informed him, in the presence of the other scholars, that he was to be punished; not because the ball had been taken from the little girl, but because of his insolence. Though attempting to carry out her threat, she was unable to do more than hit him on the neck with a leather strap, in as much as the plaintiff kept backing away from her.

About this time, the defendant, who was the principal of the school, came into the building and in passing the door leading to the third grade he observed what was going on and entered the room. Upon being told by Mrs. Taylor what had occurred, he requested the plaintiff, who was obviously in a rage, to go upstairs to the office. As the plaintiff refused to move, the defendant grasped his left wrist and in spite of constant efforts to free himself, the boy was pulled across the floor to the door and then out into the corridor from which a flight of stairs led to the floor above. The boy continued to struggle and made an attempt to kick the defendant and, either at this time or somewhat later, succeeded in scratching

him with his free hand. By now, the boy was crying and he began to call the defendant vile epithets. Finally, the latter grasped both wrists and pushed the boy to the floor. The struggling still continued and he again tried to kick the principal. The defendant then knelt on the boy's midriff with one knee, while he kept both wrists in a tight grasp.

Attending the same school were a slightly older brother of the plaintiff, named Clayton, and a still older sister in eighth grade. Quite by accident, Clayton entered the corridor about this time and seeing the principal kneeling on his brother stopped but was told to go to his room. Instead of doing that, Clayton went upstairs for his sister and shortly thereafter returned with her. By this time, the principal had shifted his position and was sitting on the boy, but arose when Clayton and his sister arrived. He then told them to take the plaintiff home.

During that period when the defendant was kneeling and sitting on the plaintiff and as a result of the latter's effort to free himself from the crushing weight on him, the boy, in the course of his squirming, sustained a slight abrasion under his right scapula, causing a break in the skin and an almost insignificant amount of bleeding. Of this injury, the plaintiff was totally unaware at the time it occurred.

The sister proceeded to take her brother home but on the way had to help him. He had difficulty in walking and felt pain in his lower back. When they reached home, he cried and complained of more pain and lay on a sofa until his mother, who had been at work, returned in the early afternoon, a matter of probably six hours after the occurrence of the above-related events. She removed her son's clothing, the upper part of which consisted of a light jersey, shirt and undershirt. On this last mentioned garment was a blood stain about the size of a thumb nail and in such a position as to indicate it had been directly over the abrasion under the right scapula. Mrs. Calway washed the wound which was, at the time, exuding a small amount of fluid.

It is needless, I think, to describe in detail the unusual and tragic sequence of events that then followed. Suffice it to say that at the situs of the abrasion an infection set in, the area became inflamed, staphylococcic septicæmia ensued, followed in turn by osteomyelitis of the lumbar spine and the crippling and long hospitalization of the boy. At one time,

his life was despaired of. He is at present capable of moving about but is encased in a plaster cast from his armpits to his buttocks. I am thoroughly satisfied that there was an unbroken chain between the osteomyelitis and the abrasion, through which, as a portal, the organisms that led up to the final diseased condition entered into the blood stream. Hence, there exists that natural and direct connection between the osteomyelitis and the events that occurred in the corridor of the Sarah Reynolds School. Thus, the real problem is whether the defendant should be held responsible, because of unlawful conduct, in causing the abrasion.

All of the many cases I have examined involve illustrations of child punishment. The instant case is not quite of that character. It has arisen out of a set of facts, occurring, not during the process of punishing a pupil, but while a principal was engaged in curbing a child in an obstinate demonstration of childish rage. In other words, the abrasion under the scapula was not the result of corporal punishment as a welt would be, following a blow from a strap. It was a totally unintended incident, happening while the principal was engaged in restraining the plaintiff in an outburst of temper.

Yet the rule of reasonableness and moderation that is universally applied to the schoolmaster's right to resort to the corporal punishment of his pupils in proper cases, should, it seems to me, have equal application where the child is being subdued rather than punished. *Peck vs. Smith,* 41 Conn. 442; *Sheehan vs. Sturges,* 53 id. 481. This standard of reasonableness, required of a schoolmaster attempting to repress an unruly pupil, must always be viewed in the light of the circumstances of each case. For example, among others, matters to be considered by the trier are the age, health, and size of the offending child, the gravity of his unruliness, or if he be in a rage, then its vehemence and impetuousness, the effect on discipline, the probable injury to person or property, and the need for prompt action by the teacher to cope with a suddenly created situation. Considerable allowance—indeed, to a much greater degree than where punishment is the objective—should be extended to the schoolmaster's judgment, especially where he is suddenly faced with the problem of an ungovernable boy and has not had the benefit of deliberation as to the proper method of overpowering him.

And yet, after all of the circumstances are weighed even

in a somewhat sympathetic attitude towards the defendant, I can reach no other conclusion than that he went far beyond the limit of reasonableness and moderation. He was a man of 46, mature, and trained for many years in administrative educational work in primary schools. He was a large man, weighing almost 200 pounds, and from his appearance in the courtroom it was evident that he was strong and powerful. He was dealing with a mere stripling, a boy of ten, whose appearance revealed him as one, if not of a puny, then surely not of a rugged constitution.

It is true that most reprehensible was the conduct of the boy, especially in uttering language which belongs to the gutter, but this much may be said, not to justify but to explain his rage, if not his filthy language. In his childish way—and he was but a child—he rebelled at what he deemed had been a real injustice done him when Mrs. Taylor indirectly accused him of having thrown the baseball on private property. Of course, the incident of the ball was insignificant but a ten-year-old mind cannot ordinarily gauge metaphysical values. Harboring, then, a not unnatural resentment because of an injustice which in his immaturity loomed large, his rage mounted when he learned that, in addition to this, he was to be punished, and in his fit of anger, among other things, he expressed himself in abominable language. Of course, he should have been punished, for he deserved it.

But to kneel, and then to sit on him is quite another matter. With his 200 pounds of weight, the defendant held that boy under him for a considerable period of time. How long it was cannot be determined with precision, but it was altogether too long, even if it was capable of justification. Certainly it lasted sufficient time to allow Clayton to reach the scene, to pause and have a word or two with the principal, then to climb a flight of stairs to the second floor, go to the eighth grade, ask for his sister and return with her to the first floor to find the plaintiff still pinned to the floor. What the defendant did gives the impression that he had lost all sense of proportion or that he too was in a rage. But whatever the reason may have been, his conduct was grossly unreasonable and immoderate and therefore, unlawful.

The abrasion was not the result of a direct blow by the defendant to the injured area. It occurred from a burning of the skin while boy squirmed about to free himself from

an unlawful act of the other. To deny, however, that the principal's conduct was the legal cause of the abrasion would be comparable to one's disclaiming liability for injuries sustained by another who to escape an unlawful menacing, falls down a flight of stairs. The causal connection between the actions of the defendant in kneeling and sitting on the plaintiff and the abrasion is legally unbroken, even though the direct cause arose from the boy's effort to escape from the oppressive weight on him.

A child's duty, while a pupil, is to submit to the reasonable discipline of the school authorities, and if injury results to him while rebelling against it, he should assume the consequences and bear his injuries without legal relief. But no child of the tender age and physical condition of this plaintiff is required to submit with the air of a Saint Cecilia while he is being crushed beneath the weight of a 200 pound schoolmaster.

The immediate effects of the defendant's unlawful actions were minor. The ultimate and proximate effects, unhappily, were great. Unfortunate as it may be for the defendant, he is liable for all those elements of damage which naturally flow from his unlawful conduct. Thoughtful consideration of these elements convinces me that reasonable compensation should be fixed at $9,140.57, the special damages amounting, as they do, to $140.57.

Let judgment enter for $9,140.57.